**UNITED STATES of America,**
**Plaintiff,**

v.

**Frederic B. HERNDON, Defendant.**

**No. 4–71 Cr. 215.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 26, 1971.

---

3. There have been no allegations that Bates made any misrepresentations to any agent of the Board.

Robert G. Renner, U. S. Atty., by Joseph M. Livermore, Asst. U. S. Atty., for plaintiff.

Olkon & Olkon by Ellis Olkon, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Defendant was charged on September 29, 1971 in a two-count indictment respectively with importation and possession of marijuana in violation of 21 U. S.C. §§ 952(a) and 841(a) (1). The only evidence adduced at a pretrial suppression hearing brought under Rule 41(e) of the Federal Rules of Criminal Procedure was the testimony of defendant himself, and the offer by the government of certain letters seized, which latter the court accepted as an offer of proof without at the time ruling on their admissibility. The court since has concluded that defendant's motion to suppress should be granted and that the objection to the letters offered by the government into evidence should be sustained.

Defendant is employed at a pilot center in charge of the "rap" program. He is six credits short of obtaining an academic degree at the University of Minnesota. On July 14, 1971 he received a telephone call from someone at the Airport that a shipment in the form of a trunk had arrived for him in bond from overseas. He arrived at the airport shortly after noon, familiar with where to go since he had worked for Northwest Airlines as a personnel coordinator for some three and a half years. He had the key to the trunk. He had been overseas some months previously working for a California company which since has become bankrupt. He claimed to have left some clothes and personal belongings in Brussels. He attempted thus to identify and to account for the shipment. Defendant testified that he did not intend to pick the shipment up at this time, first, because he was due back at work shortly and, second, because he did not have sufficient cash in his pocket to pay the shipping charges in any event.

In his presence the trunk was searched and a substantial quantity of marijuana (hashish) was found concealed therein. Defendant was arrested forthwith. He was asked for the location of his automobile (which is claimed to be his wife's though registered in his name). It was in the airport lot, estimated by defendant's counsel to be some 2,000 yards away. The automobile subsequently was seized by a United States Customs Official without a warrant. The agent searched and seized a briefcase said to be in the back seat of the car and discovered the letters which are the subject matter of the current motion. One letter is posted May 20, 1971 from Barcelona, Spain, the other from Brussels, Belgium on some date in 1970. Both are addressed to defendant and signed only "Sahib". Excerpts are as follows:

"—might have something for you in a couple of weeks—or less—but I won't

be positive until I hear from my people; whatever, I'll wire you up. Also, will probably be using that Rochester address in the near future; again, if things work out—and I'm sure they will. So keep cool . . . and quiet.

. . . all you can get—I can take. Just be cool with the mail (although probably no hassle).

. . . Dig it—sending one, possibly two of those big things to your address in Rochester. They will be done even better than the one you dug so there is no worry. Too make certain however _ _ _ I or a friend will direct a note to you (in Rochester) asking you to hold aforesaid baggage until he can arrive to pick it up. Enclosed also will be keys for customs inspection. Now, just to be certain, take it/them to Mpls and lay on it until you hear from me. Do not attempt to do anything with it _ _ _ that way you won't be held responsible for any actions.

Well, you're beginning to expand man, I hope it continues that way . . .."

It would appear that these letters are or might be incriminating to defendant to a greater or lesser degree. The government attorney endeavored at the hearing to interrogate defendant concerning the letters claiming they would evidence an intent and prior knowledge on his part as to the shipment and its contents.

■ The court does not perceive how in any event the letters could be introduced into evidence at a criminal trial over the objection of hearsay unless "Sahib" were to be called as a witness to identify the same and to testify as to their truth. Certainly the purpose of attempting introduction of them into evidence at trial would be for the truth contained therein, in an effort to show that defendant expected the shipment and knew of its contents. This is not a case of showing merely that the letters were written, whether true or false, for

if false the statements therein would be of no value to show intent on defendant's part. The United States Attorney would want the jury at a trial to believe the truth and veracity of "Sahib's" statements that a shipment of which defendant knew was coming. Obviously there is no chance to cross-examine "Sahib" on the letters nor would there be confrontation of defendant in court at his criminal trial by the witness against him, a right guaranteed him under the VI Amendment to the Constitution. Certainly a defendant cannot be convicted on the basis of a letter someone wrote to him containing incriminating statements. Were these letters written by defendant himself, or even perhaps accompanying or attached as answers to copies of such, the situation conceivably might be quite different. Such is not the case here however. The aforementioned reasons alone justify the court in excluding the introduction into evidence of the letters at the hearing on the motion to suppress, and it would seem would command exclusion at trial.

■ Apart from the above, however, the only evidence produced at the hearing was defendant's statement that he did not intend to take the trunk with him from the airport at the time for the two reasons he assigned. His automobile cannot, in this court's judgment, be said to be a "vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of * * *" an article introduced into the United States contrary to law, as specified in 19 U.S.C. § 1595a, nor "intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of drugs under 21 U.S. C. § 881(a) (4). Had defendant moved the trunk to his car as in United States v. Quintanar-Munoz, 432 F.2d 425 (9th Cir. 1970), the case might be clear that the government would have a right to seize the car without a warrant under

one or the other of the above statutes. True, under Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), a car involved in narcotics trade may be seized without a warrant, and once so seized, can be searched without a warrant. The problem here is lack of proof that the car, merely because defendant drove himself to the airport in it, was used or intended to be used in the importation or transportation of hashish. The government gets itself into a circuity or bootstrap position in arguing that the car was intended to be used—for certainly it was never in fact used—in the narcotics trade by what is found in it after the seizure of it and the discovery of the letters therein. Argument can be made of course from one of the letters itself that defendant was to go to the airport "and lay on it until you hear from me. Do not attempt to do anything with it [etc]" and that such language indicated that he did not intend, at least at that time to remove the trunk to the car but merely to identify it and clear it with customs.

For the above reason, the motion to suppress is granted. A separate order has been entered.