## Commonwealth v. Wehr

*Kenneth A. Cardone,* Assistant District Attorney, for Commonwealth.

*Oscar S. Bortner,* for defendant.

RUFE, J., May 19, 1972.—

## FINDINGS OF FACT

1. On or about January 12, 1971, a package addressed to one "Leonard Wehr, 22 Favor Lane, Levitt, (sic) Pennsylvania 19054" apparently mailed from Viet Nam, with a return address of "Sp. 4 Jones, 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 E/Trp 17 CAV, 2nd Pl. APO San Francisco 96250" was received in the United States Customs Office at the San Francisco, California, International Airport. Investigation disclosed that the return address was fictitious.

2. The package was routinely examined by United States Customs agent Che R. Kevah Wong in the normal course of his duties and under appropriate authority and was found to contain a three pound, 11-ounce supply of marihuana sewn inside pillows.

3. Appropriate reports and notification to the United States Customs Office in Trenton were made and the package rewrapped, including the marihuana and forwarded to the United States Customs Office in Trenton, N.J.

4. When the package arrived in Trenton, N.J., on or about February 1, 1971, United States Customs Special Agent Robert Keck, together with United States Postal Inspector Richard Spaulding, examined the contents of the package, and verified at the Internal Revenue Service Laboratory in Philadelphia, Pa., that it was, in fact, marihuana.

5. The marihuana was dusted with a powder visible only under ultraviolet light. The package was again rewrapped and on February 2, 1971, Agent Keck notified Officer Charles Glogowski, of the Bristol Township Police Department, of the package and its contents and asked Officer Glogowski to make arrangements to deliver the package the next day.

6. On February 2, 1971, Officer Glogowski and Detective George Stuckey of the Bristol Township Police Department appeared before District Justice Anna Huhn and secured a search warrant based on the foregoing information to search defendant's residence for narcotics and correspondence.

7. The search warrant was issued authorizing a search for marihuana and for "all correspondence relating to narcotics," although all officers knew that the package containing the marihuana had not yet been delivered and none of the officers had any knowledge of the existence of any letters that might be in defendant's possession concerning the marihuana. All parties involved in the issuance of the search warrant were fully aware of the plan to deliver the package containing the marihuana the next day.

8. On February 3, 1971, at 11:10 a.m., the search warrant was properly executed by Bristol Township Officers Glogowski, Stuckey and Gergal, United States Customs Agent Keck and United States Postal Inspector Spaulding after a "controlled delivery" of the

package was made at 10:30 a.m. by United States Post Office letter carrier Melko.

9. Upon entering the premises which were occupied at the time by defendant and defendant's mother, the officers found the delivered package opened on the table in the kitchen with the marihuana plainly visible. Both occupants were asked to place their hands under the ultraviolet light which disclosed a great deal of the dusting powder on defendant's mother's hands and only a very slight amount of the same powder on defendant's hands.

10. Defendant was read his "Miranda" rights, and then asked if he had any drugs. Defendant then produced from his bedroom a Camel cigarette pack containing several grams of marihuana, a piece of hashish, and a cigarette roller with several cigarette papers.

11. Defendant's mother produced from a purse in her bedroom a marihuana cigarette, an envelope containing a two-page note and a one-page letter, and a film strip. She stated that she had confiscated these items from her son. The search also produced another letter in the son's bedroom.

12. Thereafter, defendant made the following statement, clearly after his rights had been explained to him:

A. "It had to happen sooner or later", addressed by defendant to his mother.

B. "I told you not to open it, you should have let me take it back to the Post Office," addressed by defendant to his mother.

C. "The stuff is in the drawer," addressed by defendant to the police officer in charge to an inquiry as to whether or not there was any more "stuff" in the house.

D. "You can't bust the whole country for grass, the

next generation will change the law," addressed rhetorically by defendant presumably to the police officers.

## TESTIMONY and DISCUSSION

Defendant, by this motion for suppression of evidence, seeks to suppress (1) the marihuana and other contraband obtained as a result of the search; (2) the letters similarly obtained; and (3) the statements made by defendant.

Defendant appears to have abandoned his request to suppress the statements, for his brief makes no mention whatsoever of that aspect of his motion. In any event, it is clear that the statements should not be suppressed and, accordingly, we overrule that aspect of the motion and address ourselves only to the first two contentions.

The basis for the requested suppression of the seized evidence is the lack of probable cause existing at the time of the issuance of the warrant because the officers had no knowledge of any illegal materials in defendant's possession independent of the package in the mail. Defendant argues further that the officers knew at the time of the issuance of the warrant that the contraband they hoped to seize was not in the property to be searched because they had the contraband in their possession when the warrant was issued. Therefore, the warrant was presently issued regarding illegal activity to take place at some time in the future.

In regard to the letters, defendant argues that the officers had absolutely no information whatsoever upon which to base a request to search for any correspondence. The search for the letter in defendant's view, was a fishing expedition hopefully to find the letters that would supply the prior knowledge necessary for the Commonwealth to make a case that de-

fendant knew, or had reason to know, of the impending arrival of the mailed contraband.

There is a notable dearth of reported cases in Pennsylvania concerning the issuance of search warrants for criminal activity which is not presently occurring but will occur at some time in the future. The most significant case found is Judge Beckert's opinion in Commonwealth v. Joseph Daniel Prusinski, 22 Bucks 128 (1971), in which on strikingly similar facts the court held:

"The test that should be applied in determining the validity of the warrant is not whether the thing sought to be seized was so located at the premise named in the search warrant at the time of the issuance thereof, but whether there was demonstrated to the issuing authority probable cause to believe that the article sought to be seized would be so located at the time the warrant was to be executed and that the execution thereof would take place within a reasonably prompt period of time after issuance."

We believe this to be the proper test and reaffirm this court's earlier ruling to that effect. See Beal v. Skaff, 418 F. 2d 430 (1969), and People v. Baker, 322 N.Y.S. 2d 374 (1971), for a similar ruling on similar cases in other jurisdictions.

Defendant cites Commonwealth v. Rehmeyer, 29 D. & C. 2d 635 (1962), and Commonwealth v. Billock, 50 Wash. Co. 162 (1969), as controlling and ruling contrary to this court's Prusinski rule. In Rehmeyer, the court ruled invalid a search warrant issued to raid a "stag show" that was to take place some four hours after the warrant was issued. We respectfully disagree with that ruling, and, nevertheless, are able to distinguish it in any event. In that case, the "stag show" was scheduled to occur at a specific time and presumably would have lasted for a period of time. It's

quite possible that the warrant might have been obtained after the show began and executed while the show was in progress. The transfer, delivery and distribution of drugs and narcotics on the other hand is such an elusive, surreptitious and clandestine process that can take place so rapidly that the loss of the barest minimum amount of time involved in leaving a scene where narcotic activity is believed to be occurring to obtain the required search warrant may result in the dissipation and consequent loss of the most vital and valuable evidence necessary for prosecution. Thus, we believe the rule adopted in the Prusinski case and reaffirmed here, to be correct.

The Billock case is more difficult to distinguish and presents a different problem. In that case, the court ruled invalid a search warrant based on reliable information that defendant would be receiving a package in the mail containing narcotics. The warrant was issued and executed some time later after the Post Office had notified the officers that a package was being delivered to defendant. The officers did not know what was in the package, but the search did, in fact, produce narcotics which had been so mailed, although at the time of execution of the warrant, defendant had not yet accepted the package. The court ruled the search invalid because the information supplied by the informant was insufficient to establish probable cause. The court there pointed out the dilemma arising from evaluating an informant's motivation for giving his information, i.e., was the informer conscientiously attempting to aid in law enforcement, or was he setting up defendant with the intention of then arranging to mail the narcotics to defendant, without defendant's knowledge, for whatever purpose the informer may have.

The instant case is distinguishable because there is

no question of the reliability and sufficiency of the information supporting the issuance of the warrant. Nevertheless, the basic conflict remains the same as a more subtle "informant" seeking trouble for a defendant may very well arrange the mailing of narcotics that would be "discovered" by customs agents in much the same manner as in this case. However, even if that be a danger, search warrants must issue where sufficient concrete, reliable information exists giving rise to the requisite probable cause of illegal activity.

In regard to the inclusion of the search for correspondence in the affidavit and warrant, we find there was no probable cause supporting authority to search for any such correspondence.

All of the Commonwealth witnesses questioned on their knowledge of "correspondence relating to narcotics" very candidly acknowledged that they had no evidence of or reason to believe defendant had been corresponding with anyone concerning narcotics. Consequently, the inclusion in the warrant of authority to search for such correspondence virtually constitutes a fishing expedition to obtain the conviction clinching evidence that defendant knew the marihuana shipment was coming.

The Commonwealth argues that under the rule announced in Warden v. Hayden, 387 U.S. 294 (1967), the officers would be entitled to seize any such correspondence relating to narcotics that it might find incident to the search for the marihuana. Therefore, what difference does it make whether or not the search for such correspondence is set forth in the warrant? We believe there is a difference. It is quite true that the police officers in this case might have seized a letter from Viet Nam addressed to defendant if they found it in plain view in his dresser while searching for the

marihuana, even though not included in the search warrant, under the Hayden rule. However, absent a showing of probable cause of the existence of such correspondence, we do not believe the Hayden rule would authorize the police officers to sort through a box of correspondence possibly containing business mail or love letters found in defendant's dresser. In the instant case, the warrant authorized the officers to sort through any correspondence they might find in the house without any probable cause to believe they would, in fact, find any such correspondence relating to the marihuana shipment. Such authority should only be granted upon proper showing of probable cause that the defendant has been engaging in such correspondence. Since the correspondence in this case was produced after the reading of the search warrant to defendant and his mother, and they assumed the legality thereof, that correspondence must be suppressed.

The contents of the letters were not placed in the record and accordingly, we do not know what, if any, incriminating statements may have been included in the letters. However, assuming the purpose of offering the letters into evidence would be to establish that defendant had prior knowledge of the marihuana shipment, then the truth of the statements in the letters concerning the shipment would be in issue. We are cognizant of the decision in United States v. Herndon, 334 F. Supp. 533 (1971), in which the Minnesota Federal District Court suppressed such a letter on the hearsay rule, holding that the truth and veracity of the sender's statement were in issue and must be subject to confrontation and cross-examination by defendant. This is quite different from the situation where the letters in question might have been written by defendant himself. Presumably, this same rationale applies to this case as well.

## CONCLUSIONS OF LAW

1. Probable cause did exist for the issuance of a search warrant to search defendant's residence for marihuana.

2. Probable cause did not exist for the issuance of a search warrant to search defendant's residence for correspondence relating to narcotics.

3. Statements made by defendant at the time of the execution of the search warrant were made after defendant had been properly advised and informed of his right to remain silent.

## ORDER

And now, to wit, this May 19, 1972, the motion of defendant to suppress correspondence seized as a result of the search warrant issued in the above case is sustained and said correspondence is hereby suppressed; the motion to suppress the marihuana seized under the authority of the same search warrant, and the statements made at the time of the execution of the same search warrant is hereby denied.